**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HALPERN 2012, LLC, on behalf of
themselves and others similarly situated,        Case No. 18-11887

        Plaintiff,                     Honorable Nancy G. Edmunds

v.

CITY OF CENTER LINE,

        Defendant.

_____/

**ORDER AND OPINION GRANTING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15] [19] [24]**

In this putative class action, Plaintiff Halpern 2012, LLC challenges the constitutionality of Defendant City of Center Line's rental property ordinance. Pending before the Court is Defendant's motion for summary judgment. Plaintiff opposes the motion. On July 10, 2019, the Court held a hearing in connection with the motion. For the reasons set forth below, the Court **GRANTS IN PART** Defendant's motion for summary judgment. In addition, pursuant to Federal Rule of Civil Procedure 56(f), the Court **GRANTS** partial summary judgment in favor of Plaintiff on Count II of its complaint.

## I.    Background

Defendant is a municipal corporation in the State of Michigan. Like many municipalities, Defendant has a Property Maintenance Code ("PMC") that includes provisions regulating landlords and the leasing of residential housing units. Defendant's PMC requires property owners who rent out their properties to, among other things, register their property with the City, comply with habitability standards, and submit to inspections. Defendant charges fees for occupancy certificates and inspections, and

1

imposes fines when inspections are refused. Defendant's ordinances are derived from the International Property Maintenance Code of 2009, a widely used set of standards.

Plaintiff owns a single-family rental property located at 8424 Harding in Center Line, Michigan that is subject to Defendant's PMC. Plaintiff's property is managed by Garner Property Management. At all relevant times, Plaintiff's property has been occupied by a tenant. After Plaintiff was issued a citation for failing to schedule a follow-up inspection, Plaintiff initiated this putative class action challenging the constitutionality of Defendant's rental property inspection ordinances. Plaintiff alleges that Defendant's PMC is unconstitutional because the version of the PMC in effect when the case was filed authorizes rental property inspections without a warrant or an opportunity for pre-compliance review. Asserting various legal theories, Plaintiff asks the Court to void the PMC and order Defendant to return all fees and fines collected under it.

The specific ordinance challenged by Plaintiff requires inspection of rental properties to ensure compliance with Defendant's ordinance requirements and habitability standards. Pursuant to Center Line Rental Ordinance § 14-212(a), the city building department shall inspect "on a biennial basis any non-owner occupied residential building in the city including the individual residential dwelling units therein." (*Id*. at § 14-212.) The building official "shall determine whether the building complies with the standards of the city building, plumbing, electrical and heating ordinances." (*Id*. at § 14-213.) If the building inspected complies with these standards, the city building department will issue a certificate of compliance to that effect. (*Id*. at § 14-214.) Should a property owner dispute the findings of the inspector, the owner is afforded an appeal procedure as

a matter of right. (*Id.* at § 14-219.)  No person is permitted to occupy any such building without a certificate of compliance. (*Id.* at § 14-215.)

Although the inspections are mandatory for a certificate of compliance to be issued, it is the owner of the property who must schedule the inspection.  Defendant sends a letter requesting the inspection be scheduled, and the owner is expected to call and do so.  A property owner faces a range of penalties if it fails to schedule the inspection and comply with the ordinance.

On April 10, 2017 an initial inspection of Plaintiff's property was conducted.  The parties appear to agree that consent by either the property owner or the tenant was given for the inspection.  The inspection report identified a number of issues with the dwelling, including repairs needed to the basement, ceiling, and garage, which were necessary to be completed before a certificate of compliance could be issued.  After the inspection, Defendant sent a letter to Plaintiff's property manager detailing the required repairs and setting May 10, 2017 as the completion date.  On May 11, 2017, a second letter was sent to the property manager noting that a certificate of compliance was missing in violation of § 14-215.  This letter instructed the property manager to contact Defendant within five days to schedule a reinspection that would confirm completion of the repairs.  On June 8, 2017, the property manager wrote to Defendant requesting a 45-day extension.  Defendant concedes this extension was granted.  However, by August 5, 2017, reinspection had still not occurred and third letter was sent to Plaintiff's property manager requesting a follow up inspection.  On September 13, 2017, Defendant issued Plaintiff a citation for continuing to rent a residential property without a valid certificate of compliance in violation of § 14-215.  In October of 2017 the citation was dismissed by Defendant.

Plaintiff did not pay any fines or receive any criminal penalties in connection with the dismissed citation.

On June 13, 2018, Plaintiff initiated this putative class action lawsuit against Defendant. The complaint includes six counts all arising from the constitutionality of the inspection ordinance. Specifically, Plaintiff claims Defendant's ordinance violates the Fourteenth Amendment's Due Process Clause (Count I) and the Fourth Amendment (Count II) and raises claims of unjust enrichment and the "remedy of assumpsit" under state law (Count III). The complaint also includes claims for injunctive and declaratory relief (Counts IV and V), and for liability under 42 U.S.C. § 1983 (Count VI).

On February 6, 2018, Plaintiff filed its motion for class certification. Through this motion, Plaintiff seeks certification of a class of all property owners who paid inspection or registration fees under Defendant's ordinance. Following a hearing, the Court took the class certification issue under advisement pending the resolution of Defendant's dispositive motions.

Now before the Court is Defendant's motion summary judgment seeking dismissal of Plaintiff's claims in their entirety. Plaintiff filed a response in opposition and Defendant submitted a reply brief. Plaintiff has also filed a motion to amend Count III of its complaint, which the Court will grant through this Order, as discussed below.

## II.    Summary Judgment Standard

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts

that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

## III.    Analysis

### A.  Plaintiff's Claims

Although the complaint is styled in six counts, there are really only two viable standalone causes of action: deprivation of due process under the Fourteenth Amendment (Count I) and violation of the Fourth Amendment prohibition against unreasonable searches (Count II). The remaining counts either address aspects of those claims brought under 42 U.S.C. § 1983 or the types of relief sought. *See MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 411 (E.D. Mich. 2019) (addressing nearly identical claims).

The parties agree that under Michigan law there is no independent cause of action for the claim of assumpsit. *See Fisher Sand & Gravel Co. v Neal A. Sweebe, Inc.*, 494 Mich. 543, 564, 837 N.W. 2d 244, 256 (2013). As Plaintiff points out, however, *Fisher* preserved the substantive remedies traditionally available under assumpsit. *Id.* at 256-257. The availability of those remedies depends in part on Plaintiff's success on its substantive counts. *See MS Rentals*, 362 F. Supp. 3d at 412; *Garner Properties & Mgmt. v. Charter Twp. of Redford*, No. 15-14100, 2017 WL 3412080, at *17 (E.D. Mich. Aug. 8, 2017); *NILI 2011, LLC v. City of Warren*, No. 15-13392, 2017 WL 5467746, at *9 (E.D. Mich. Nov. 14, 2017).

Plaintiff filed a motion to amend its complaint to clarify that it brings its count for restitution (Count III) under a theory of unjust enrichment and to clarify the underlying cause of action for restitution. The Court will grant leave to amend the complaint. However, for the reasons discussed below, this claim (Count III) will be dismissed. Similarly, the counts styled as "Injunctive Relief" (Count IV) and "Declaratory Relief" (Count V) do not state independent claims. These remedies are dependent on the viability of the Fourth and Fourteenth Amendment claims.

Finally, the claim styled as "Violation of 42 USC 1983" (Count VI) alleges only that Plaintiff is entitled to relief for the previously-alleged constitutional violations. To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Bayes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). There is no dispute here as to the second element. Plaintiff argues the first element is satisfied by the demonstrated

unconstitutionality of the inspection provisions challenged in Counts I and II. Count VI, then, is merely a repetition of those counts. *See MS Rentals*, 362 F. Supp. 3d at 412.

## B. Standing

Defendant challenges Plaintiff's standing to assert its Fourth Amendment claim (Count II) on two grounds. First, Defendant argues Plaintiff lacks Fourth Amendment standing to assert a constitutional violation resulting from a search of tenant-occupied rental properties. Second, Defendant argues Plaintiff has not suffered an injury-in-fact and therefore fails to meet the Article III requirements for federal jurisdiction.

### 1. *Plaintiff's reasonable expectation of privacy in tenant-occupied property.*

It is undisputed that at all relevant times, Plaintiff's property was occupied by a tenant. According to Defendant, this means Plaintiff lacks standing to assert a claim under the Fourth Amendment because it lacked a reasonable expectation of privacy in its occupied rental property. (ECF No. 24, PG. ID. 609.) Defendant cites *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003) to support the proposition that a property owner of a tenant-occupied property lacks standing to challenge the constitutionality of a municipality's rental property code on Fourth Amendment grounds. In response, Plaintiff argues *Shamaeizadeh* is distinguishable from the present case and that notwithstanding the occupancy status of the property, it has standing to challenge the constitutionality of the ordinance because it "is the only one that can suffer the wrath of the City under the unconstitutional Inspection Ordinances." (EFC No. 26, Pg. ID. 727.)

The Court agrees with Plaintiff that *Shamaeizadeh* is not directly applicable to Plaintiff's claims in this case. *Shamaeizadeh* involved a police search of a home shared by the owner and his basement lessees in which law enforcement seized drugs, drug

paraphernalia, and an assortment of papers and records. *Shamaeizadeh*, 338 F.3d at 540-42. The Sixth Circuit explained that to assert a Fourth Amendment violation, the plaintiff property owner must establish that the government's action in some way invaded his own reasonable expectation of privacy.[1] *Id.* at 544. The court concluded the plaintiff property owner lacked standing to maintain his § 1983 claim because he had no reasonable expectation of privacy in property occupied by the tenant. *Id.* at 545.

Importantly, the Sixth Circuit did not find the property owner lacked standing to challenge the constitutionality of a rental property ordinance in general. The Court discussed standing in the context of asserting a constitutional violation claim under 42 U.S.C. § 1983. In other words, *Shamaeizadeh* stands for the proposition that a property owner lacks standing to assert a specific Fourth Amendment violation in tenant occupied property, but the case does not impact a property owner's standing to challenge the facial or as-applied constitutionality of a statute or local ordinance. For example, in *Landon v. City of Flint*, 2017 WL 2806817, at *4-5 (E.D. Mich. Apr. 04, 2017), the court found the plaintiff property owner lacked standing under *Shamaeizadeh* to assert a claim based on alleged violations of his Fourth Amendment rights because he did not have a reasonable expectation of privacy in properties that he leased. Notwithstanding, the court concluded the plaintiff was entitled to a judgment declaring that the city's inspection ordinance violated the Fourth Amendment. *Id.* at *3.

---

[1] This test was initially established to free Fourth Amendment protections from the solitary constraints of property rights. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("For the Fourth Amendment protects people, not places"). More recently, the test has been applied in cases addressing one's expectation of privacy in his physical location and movements and in the information shared with other parties. *See United States v. Knotts*, 460 U.S. 276 (1983) and *Carpenter v. United States*, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018). Most of these cases involved searches conducted by law enforcement. The application of this test to a case involving routine administrative inspections of rental properties therefore requires more justification than the City provided.

Here, if Plaintiff's claim arose from a specific unconstitutional search of the property, standing would probably be lacking. *See Shamaeizadeh*, 338 F.3d at 545.[2] But Plaintiff does not challenge a particular historical search; Plaintiff challenges an ordinance that allegedly authorizes inspections to occur without constitutional requirements. Accordingly, Plaintiff has standing to raise such a challenge under the facts and circumstances presented here.

### 2. Article III Standing

Defendant also argues Plaintiff failed to show it suffered an injury-in-fact and therefore cannot invoke federal jurisdiction. Defendant points out that no government official forced entry into Plaintiff's property without consent, nor did Defendant ever deny a certificate of occupancy precluding the rental of the property. Having failed to show any injury on these grounds, Defendant contends that Plaintiff fails to meet all requirements for Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendant relies on a recent Sixth Circuit decision to support this argument. In *Vonderhaar v. Village of Evendale, Ohio*, 906 F.3d 397 (6th Cir. 2018), the plaintiffs sought to enjoin the village from enforcing its property maintenance code because it allegedly authorized warrantless searches in violation of the Fourth Amendment. *Id.* at 399. Concluding the ordinance did not include an express warrant provision sufficient to overcome a constitutional challenge, the district court granted a preliminary injunction on the plaintiff's claim that the ordinance was facially unconstitutional. *Id.* at 400. The Sixth

---

[2] Defendant cites two other cases in making its argument that Plaintiff lacked a reasonable expectation of privacy. *Hardwig v. United States*, 23 F.2d 922 (6th Cir. 1928) is a criminal case that predates the advent of the reasonable expectation of privacy test formulated in *Katz*. And *Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001) involved the seizure of computer materials in a criminal investigation. Without further explanation, it is unclear how these cases relate to the present matter or support the argument that *Shamaeizadeh* should controls this case.

Circuit disagreed and vacated the preliminary injunction against the village. In reversing the district court's order, the Sixth Circuit acknowledged that the Village had "no history of prior illegal searches," found no evidence that the alleged unconstitutional provision was ever enforced, and concluded that the plaintiffs had not suffered any actual or threatened Fourth Amendment injury. *Id.* at 401-02. Accordingly, the Court held the plaintiffs lacked standing to mount either a facial or as-applied challenge to the ordinance because there was no actual or threat of injury. *Id.*

In its motion, Defendant attempts to draw a connection between *Vonderhaar* and the fact that the record here indicates that Center Line, like the Village of Evendale, does not have a history of prior illegal searches. (ECF No. 24, Pg. ID. 615.) However, Defendant overlooks an important factor in the Sixth Circuit's decision. The Sixth Circuit found that "[a]ll of the evidence shows that the Village will get a warrant if it wishes to inspect a home." *Vonderhaar*, 906 F.3d 397 at 401. The evidence considered by the Court included not just the village's clean record, free from Fourth Amendment violations, but also the village's code itself. "Start with the code. It permits a building commissioner only to 'secure entry' to a structure with 'the remedies provided by law'". *Id.* The village successfully argued that because warrantless searches are per se illegal absent exigent circumstances, the language of its code could not possibly authorize warrantless administrative searches. *Id.* Whereas the district court had found this language lacking, the Sixth Circuit found it to be sufficient in light of both the village's history of not conducting illegal searches and its amendment of the code in an effort to "remove all doubt[.]" *Id.* The village's record was therefore only important because of its relationship

to the code's language; together, the two provided convincing evidence that the plaintiff had not suffered injury because the village's code did not authorize warrantless searches.

Defendant's reliance on *Vonderhaar* would be well founded if its own former ordinance included similar language. But Defendant's ordinance does not include such language, at least not in the original version in dispute here.[3] And it is the absence of such language, language that can be read as providing an express warrant procedure or the opportunity for pre-compliance review, which affords Plaintiff standing to challenge the constitutional validity of Defendant's ordinance.

Under Defendant's prior ordinance, rental property owners were faced with the choice of consenting to warrantless inspections or facing criminal and financial penalties, a choice the Supreme Court has expressly disavowed under the Fourth Amendment. *See Camara v. Mun. Court*, 387 U.S. 523, 532 (1967); and *City of Los Angeles, California v. Patel*, 135 S. Ct. 2443 at 2452, 192 L. Ed. 2d 435 (2015). For this reason, Defendant has failed to carry its burden of establishing that, as a matter of law, summary judgment is warranted on the basis that Plaintiff lacks standing. Because the Court declines to find that Plaintiff lacks Article III standing, it will not address the issue of whether the subsequently dismissed citation constitutes an injury-in-fact.

---

[3] In its reply, the City suggests that its old ordinance was never unconstitutional in part because it had adopted the 2009 version of the International Property Maintenance Code (IPMC) by reference. (ECF No. 27, PG. ID. 846, fn. 3). Sec. 104.3 of the IPMC provides that "[i]f entry is refused, the code officer shall have recourse to the remedies provided by law to secure entry." *Id.* But simply adopting the IPMC does not remove grounds for constitutional challenges. The Evendale ordinance in *Vonderhaar* included this language within its own provision regarding Right of Entry. *Vonderhaar v. Village of Evendale, Ohio*, 2018 WL 488220 at *1 (S.D. Ohio Jan. 19, 2018). Compare this with the original version of § 14-220 in the City's unamended ordinance.

## C. Mootness

Defendant contends Plaintiff's requests for declaratory and injunctive relief are moot because Defendant amended its inspection ordinance to include an explicit warrant procedure. Plaintiff's principal challenge to the inspection process is that it lacked a provision for obtaining pre-compliance review. The amended ordinance addresses that defect, and perhaps cures it.

Defendant argues that because the amendments correct the alleged constitutional deficiencies in its ordinance, there is no need for the Court to intercede. But "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *See MS Rentals*, 362 F. Supp. 3d at 415; (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* (internal quotations omitted). If that were the case, the defendant would be free to resume his wrongful conduct. *Id.* (citations omitted). Consequently, Defendant is not entitled to summary judgment on Plaintiff's Fourth Amendment claim because of mootness.

## D. Fourteenth Amendment Claim (Count I)

Under the Fifth and Fourteenth Amendments to the U.S. Constitution, a state cannot deprive a person of their property without due process of law. In Count I of the complaint, Plaintiff alleges that it has "a protected property interest in renting property and earning income from doing so." Plaintiff contends Defendant's rental ordinance and

inspection requirements violate its due process rights by depriving it of this protected property interest. (ECF No.19-1, ¶ 40-41, Pg. ID. 424.)

Defendant argues Plaintiff's substantive due process claim fails because it is based on the same governmental action giving rise to its Fourth Amendment claim. (EFC No. 24-14, Pg. ID. 602-03.)  Relying on *County of Sacramento v. Lewis*, 523 U.S. 823, 842 (1998), Defendant argues Plaintiff cannot succeed on a generalized notion of substantive due process where a particularized constitutional amendment applies. According to this argument, Plaintiff's claims in Count I cannot be sustained and dismissal is warranted.  The Court agrees.

Plaintiff's due process theory is rooted in the idea that the City imposed unconstitutional conditions on its right to engage in protected activity, that is, the right to own and rent real property.  The unconstitutional condition, according to Plaintiff, is the requirement to "give up [its] constitutional right to be free from unreasonable searches and seizures." (ECF No. 19-1, ¶ 52, Pg. ID. 426.)

The unconstitutional conditions doctrine is a check on the coercive power of government, and as such finds its origins as a species of substantive due process. *MS Rentals*, 362 F. Supp. 3d at 413 (citing Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 HARV. L. REV. 1413, 1415 & n.3 (1989)).  That doctrine holds that a government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether. *Id.*; *Amelkin v. McClure*, 330 F.3d 822, 827-28 (6th Cir. 2003);

Plaintiff contends the unconstitutional conditions doctrine fits this case because Defendant will not issue a certificate of compliance on rental properties unless a landlord

or property owner surrenders his or her right to be free from warrantless searches. But Defendant's PMC does no such thing. There are no requirements that a landlord waive rights under the Fourth Amendment as a condition of obtaining a certificate of compliance. Certainly, Defendant requires rental properties to meet the PMC's habitability standards, and the landlord must demonstrate compliance through an initial inspection. And there is nothing wrong with that. "[I]t is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities." *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985) (Harvey, J.) (citations omitted). Plaintiff does not contest Defendant's power to institute violations where a rental property is operating without a certificate of compliance. The underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a violation are lawful, as is the requirement that landlords demonstrate compliance before being allowed to rent the property to tenants.

Plaintiff criticizes the PMC's enforcement mechanisms that include an unfettered right for City officials to inspect a property to ensure compliance without a warrant, and that refusal to allow such inspections will jeopardize a previously-issued certificate of compliance. Plaintiff argues that § 14-220 of the City's code specifically authorizes designated inspectors to enter real property without a warrant. The same section also allegedly authorizes the City to punish property owners who refuse an inspection for any reason by issuing a violation.

As the Sixth Circuit recently explained, however, this argument is nothing more than "a run-of-the-mine exercise of the city's police power . . . [turning on] whether the

property owners have a cognizable Fourth Amendment right to resist warrantless searches premised on a finding that their properties have become dangerous." *Benjamin as Tr. of Rebekah C. Benjamin Tr. v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019). The argument is more properly addressed in its Fourth Amendment claim, not as a substantive due process argument.

And for that reason, Plaintiff's claims in Count I cannot be sustained.[4] Substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments. *See Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (reasoning that "[a]lleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment"). Where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available, *see County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Defendant is entitled to summary judgment on Count I of the complaint.

### E. Fourth Amendment Claim (Count II)

Plaintiff claims Defendant's inspection ordinance is unconstitutional on its face and as applied as repugnant to the Fourth Amendment. Plaintiff cites the Supreme Court's decision in *City of Los Angeles, California v. Patel* to support its theory. *See City of Los Angeles, California v. Patel*, 135 S. Ct. 2443, 2452, 192 L. Ed. 2d 435 (2015) (explaining that "absent consent, exigent circumstances, or the like, in order for an administrative

---

[4] Defendant's motion for summary judgment provides three arguments as to why Count I cannot be sustained. Two are addressed above. Defendant also argues that Plaintiff cannot establish a violation of due process because it lacks a protected property interest. Because Count I cannot be sustained for other reasons, the Court will not address this third argument.

search to be constitutional, the subject of the search must be afforded an opportunity to obtain pre-compliance review before a neutral decisionmaker.").  In *Patel*, the Supreme Court explained that "[a] facial challenge is an attack on the statute itself," and while more exacting standards apply, such challenges "are not categorically barred or especially disfavored."  *Patel*, 135 S. Ct. at 2449.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Am. IV.  Unreasonable searches are unlawful, and, as a general rule, a warrantless search of a home or business is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011).  There are exceptions.  One exception to the warrant requirement focuses on a search "conducted for a 'special need' other than to investigate criminal wrongdoing.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018).  A search whose purpose is distinguishable from the general interest in crime control—such as the inspection at issue here—is termed an "administrative search". *Patel*, 135 S. Ct. at 2452.  "Also included in this exception are administrative searches designed to assure compliance with building codes, including codes designed to prevent buildings from becoming dangerous to tenants or neighbors." *Benjamin*, 915 F.3d at 1069 (citing *Patel*, 135 S. Ct. at 2452; *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)).

Under certain circumstances, where the warrant and probable cause requirements generally associated with a search are impracticable, it is permissible that no warrant ever be required. *Garner Properties*, 2017 WL 3412080 at *11 (citing *Patel*, 135 S. Ct. at 2452). But "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain pre[-]compliance review before a neutral

decisionmaker." *Id.*  Pre-compliance review is a "minimal requirement." *Id.*  Otherwise, there exists an "intolerable risk" that searches authorized by an ordinance will exceed statutory limits or be used as pretext to harass individuals. *Patel*, 135 S. Ct. at 2452-53. Additionally, the opportunity for pre-compliance review must be such that a property owner has a chance to challenge a warrantless search *before* being sanctioned for refusing entry to a city inspector. *Liberty Coins*, 880 F.3d at 280.

Following *Patel* and its progeny, the former version of Defendant's inspection ordinance violates the Fourth Amendment.  The record before the Court reflects that Defendant's former ordinance did not provide for any pre-compliance review and that inspections were never performed under a warrant.  And Defendant's ordinance levied penalties against property owners who refused inspection before they had an opportunity to challenge the warrantless inspection.  It is also telling that Defendant used its motion and reply to argue Plaintiff's lack of standing but made no real effort to address the gaps in its ordinance or to defend its validity.  Additionally, Defendant amended its ordinance, so it now includes an opportunity for pre-compliance review before Defendant levies fines or seeks a warrant.  The Court finds the former version of the ordinance is unconstitutional on its face. Because Plaintiff's facial challenge survives summary judgment, the Court need not reach the as-applied challenge. *Liberty Coins*, 880 F.3d at 291.

The undisputed facts demonstrate that Plaintiff is entitled to a partial judgment declaring the former version of the ordinance unconstitutional.  However, because the ordinance has been amended to include both the opportunity for owners to obtain pre-compliance reviews before yielding to an inspection and an express warrant procedure, there is no need to grant injunctive relief. *See MS Rentals*, 362 F. Supp. 3d at 417. *See*

*also Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130-31 (9th Cir. 2004) ("[R]evisions of the election code have mooted the plaintiffs' requests that the district court . . . enjoin application of the challenged code provisions in future elections.").

## F. Damages

Plaintiff seeks damages for Defendant's alleged constitutional violations under 42 U.S.C. § 1983. Specifically, Plaintiff believes it is entitled to all registration and inspection fees paid to Defendant under the former ordinance because these payments were compelled under an unconstitutional law.

Notwithstanding the unconstitutionality of former § 14-220, Defendant argues Plaintiff cannot recover damages as part of their claim under § 1983 because plaintiff cannot establish causation. To recover damages under § 1983, the plaintiff must bring out facts that establish a causal connection between the constitutional violation and the damages they seek. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) ("Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim.") (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005)); *MS Rentals*, 362 F. Supp. 3d at 418. The Court must therefore determine whether the absence of pre-compliance review was both the cause in fact and proximate cause of plaintiff's payment of inspection and registration fees. *Powers*, 501 F.3d at 608.

"Cause in fact is typically assessed using the "but for" test, which requires us to imagine whether the harm would have occurred if the defendant had behaved other than it did." *Id*. In other words, here, Plaintiff must show that it and the other property owners would not have paid the registration and inspection fees "but for" the absence of pre-compliance review. "[I]f the result would have occurred without the conduct complained

of, such conduct cannot be a cause in fact of that particular result." *Id.* (citing *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

But here, the unavailability of a pre-inspection review process or warrant procedure is not the cause in fact of these fees or the "damages" which Plaintiff claims to have incurred. To lawfully rent a property within the City, a property owner must obtain a certificate of compliance and pay registration and inspection fees. Municipalities are entitled to impose inspections and certificates of compliance to ensure the health, safety, and welfare of its citizens. *15192 Thirteen Mile Road*, 626 F. Supp. at 823. Rental property inspections are therefore clearly mandated by law and it is likewise permissible for Defendant to charge minimal amounts to offset the costs associated with these inspections. *See Kircher v. City of Ypsilanti*, 269 Mich. App. 224 at 232, 712 N.W.2d 738 (2005) ("Such a fee is presumed reasonable unless it is facially or evidently so wholly out of proportion to the expense involved that it must be held to be a mere guise or subterfuge to obtain the increased revenue."). Because registration and inspection fees are lawful requirements and must be paid regardless of the absence of pre-compliance review, its absence cannot be the cause in fact of Plaintiff's injuries. And because Plaintiff cannot establish that the ordinance's deficiencies were the cause in fact of its injuries, it is unnecessary to determine whether it was the proximate cause of those same injuries.

Plaintiff has failed to establish any causal link between the alleged damages (the fees paid) and the Fourth Amendment violation resulting from the ordinance's lack of a pre-compliance review. Judge Lawson recently addressed this exact issue in a case involving similar claims. *In MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D.

Mich. 2019), a property manager[5] brought a putative class action challenging the City of Detroit's property maintenance code on due process and Fourth Amendment grounds. Like Defendant's, Detroit's Property Maintenance Code required rental property owners to register their property, comply with habitability standards, and submit to inspections. *Id.* at 407. Compliance with these requirements resulted in occupancy certificates allowing the owner to lawfully rent the property in the city. *Id.* And Detroit charged feeds for occupancy certificates and inspections, and imposed fines when inspections were refused. *Id.* at 408.

In their complaint, the plaintiffs alleged that Detroit's code authorized rental property inspections without a warrant or an opportunity for pre-compliance review. *Id.* In several counts, similar to the present matter, the plaintiffs asserted several legal theories in asking the Court to void Detroit's code and order the city to return all fees and fines collected under it. *Id.* Detroit amended its ordinance to include the required provisions and moved for summary judgment. *Id.*

In considering Detroit's motion for summary judgment, Judge Lawson agreed with the plaintiffs that Detroit's amended version of the code lacked an opportunity for pre-compliance review and was therefore constitutionally invalid. *Id.* at 414-17. While the amended version rectified the constitutional issues, Judge Lawson declined to find that the plaintiff's challenge was moot, in part because the city had stated that it would revert to the original ordinance if it were found to be valid. *Id.* at 414-16. Judge Lawson therefore found the plaintiffs were entitled to a declaratory judgment that the pre-amendment version was unconstitutional under the Fourth Amendment because it authorized

_____

[5] The property manager happens to be the same property manager for Plaintiff's property here, and Plaintiff is represented by the same counsel here.

warrantless, nonconsensual inspections of rental properties without allowing the landlord an opportunity to seek a pre-compliance review. *Id.* at 419. However, Judge Lawson found that the amendment obviated the need for injunctive relief. *Id.*

The remainder of the plaintiffs' complaint did not survive summary judgment. The plaintiffs failed to present evidence creating a fact question on any other aspect of their claims. Judge Lawson found that the claims for damages failed because the lack of a pre-compliance review "affected only the propriety of the inspection ordinance." *Id.* at 419. In other words, the plaintiffs failed to establish a causal link between the damages they sought (the registration and inspection fees) and the constitutional violation resulting from the absence of a pre-compliance review. *Id.* at 418-19.

Here, like in *MS Rentals*, "the lack of pre-compliance review affected only the propriety of the inspection ordinance[.]". *MS Rentals*, 362 F. Supp. 3d at 419. Although Defendant's former inspection ordinance did not provide an opportunity for pre-compliance review, its absence is not the "but-for" or proximate cause of Plaintiff's alleged damages. Plaintiff cannot hide behind the Fourth Amendment to avoid paying registration and inspection fees. Plaintiff's claim for monetary relief under § 1983 is therefore dismissed.

In addition to its § 1983 claim, Plaintiff seeks monetary relief in the form of unjust enrichment, restitution, "and/or assumpsit" for the fees Defendant collected under its unconstitutional ordinance. (ECF No. 26, PG. ID. 729.) Plaintiff argues it is entitled to compensation under assumpsit or theories of unjust enrichment and restitution because Defendant allegedly obtained inspection fees and imposed fines under an unlawful ordinance. In its response brief, Plaintiff cites *Fisher Sand & Gravel*, 494 Mich. at 564 for

the proposition that the substantive remedies available under assumpsit were preserved even if the theory no longer exists as a stand-alone cause of action.

Defendant argues Plaintiff has failed to establish its entitlement to damages under any of these theories. As Defendant correctly points out, Plaintiff does not identify the scope of the substantive "remedies" available under *Fisher Sand & Gravel* are or how the remedies apply here. Moreover, Plaintiff's claims for damages under theories of unjust enrichment and restitution fail because Plaintiff cannot satisfy the elements of those claims. In order to sustain a claim of unjust enrichment under Michigan law, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (Mich. Ct. App. 1993). Plaintiff cannot establish these elements. In paying lawful registration and inspection fees, Plaintiff does not confer a benefit on Defendant. Nor does an inequity result from the payment of these fees: to rent a property in the city, a landlord must have a certificate of compliance, and these fees must be paid to obtain a certificate.[6] It is the choice of the property owner to pay the required fees but fail to comply with the other requirements for receiving a certificate.

As noted, municipalities possess the authority to regulate land use and set occupancy requirements under their police power. *See 15192 Thirteen Mile Road*, 626 F. Supp. at 823. Furthermore, Plaintiff has not challenged Defendant's authority to institute

---

[6] At the hearing, Plaintiff directed the Court to Judge Goldsmith's recent opinion in *Oron 2015 LLC v. City of Southfield*, No. 18-CV-12671, 2019 WL 2502739, at *4 (E.D. Mich. June 17, 2019) as support for its unjust enrichment claim. Plaintiff stated that Judge Goldsmith sustained a plaintiff's unjust enrichment claim on summary judgment under facts and circumstances similar to here. However, in *Oron 2015 LLC*, Judge Goldsmith merely held that Plaintiff stated a plausible claim for unjust enrichment sufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Oron 2015 LLC*, 2019 WL 2502739, at *4.

registration and collection fees, nor has Plaintiff challenged Defendant's authority to prohibit renting properties without a certificate of compliance. And Plaintiff has not established that it actually paid any unconstitutional inspection fees and therefore has not suffered an injury-in-fact with respect to these damage claims.

Plaintiff also cites several cases that it suggests stand for the proposition that a party may seek repayment of monies paid under an illegal statute. However, as Judge Lawson found in *MS Rentals*, the cases cited by Plaintiff all involved refunding payments where the underlying tax or assessment scheme was deemed unlawful. *See MS Rentals*, 362 F. Supp. 3d at 419 (citing and discussing: *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Reg. of Fla.*, 496 U.S. 18, 22 (1990) ("[T]he Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional."); *Carpenter v. Shaw*, 280 U.S. 363, 369 (1930) ("[A] denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment."); *Theatre Control Corp. v. City of Detroit*, 370 Mich. 382, 388, 121 N.W.2d 828, 830 (1963) (allowing plaintiffs to maintain an action to recover payments made pursuant to unlawful water assessment); *Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 370 Mich. 128, 133, 121 N.W.2d 427, 430 (1963) ("[P]laintiff's payments were involuntary, made under the compulsion or duress of being denied the right to continue its business unless it paid the unlawful exactions," which were "in excess of the cost of issuing the license and regulating the business to which they applied."); *AFT Mich. v. State of Mich.*, 315 Mich. App. 602, 893 N.W.2d 90 (2016) (directing return of subject funds to plaintiffs who had contributed

three percent of their salaries to state retirement system under unconstitutional state law)).

These cases involved taxes or other assessments which were themselves illegal. Plaintiff has not challenged the registration or inspection fee as unconstitutional or illegal; Plaintiff challenges the procedures as unconstitutional to the extent they permit warrantless searches or lack pre-compliance review. While the Court agrees that Defendant's former ordinance lacked pre-compliance review, this does not render the entire ordinance unconstitutional. The collection of registration and inspection fees is not itself illegal, so the cases cited by Plaintiff are distinguishable from the present matter. As stated above, pre-compliance review affects only the propriety of the inspection, not the legality of the associated fees for an otherwise permissible inspection.

Plaintiff has failed to establish it is entitled to recover fines, inspection fees, registration fees, or other damages. Accordingly, Defendant is entitled to summary judgment on the damages claim in Count II of the complaint as well as Plaintiff's other claims seeks monetary relief.

## IV.    Conclusion

The pre-amendment version of § 14-220 of Defendant's PMC is unconstitutional under the Fourth Amendment because it did not include an explicit warrant procedure or the opportunity for pre-compliance review. Plaintiff is entitled to a declaratory judgment to that effect. The subsequent amendment of the ordinance does not render the issue moot, but it does obviate the need for injunctive relief. Finally, Plaintiff has not brought forth evidence creating a fact question on any other aspect of its complaint and has not presented evidence establishing it is entitled to recover damages.

Accordingly, it is **ORDERED** that Plaintiff's motion for leave to amend its complaint (ECF No. 19) is **GRANTED**; Defendant's motion for summary judgment (ECF No. 24) is **GRANTED IN PART**; Plaintiff is **GRANTED** partial summary judgment under Federal Rule of Civil Procedure 56(f)(1) as to part of Count II declaring the pre-amendment version of § 14-220 of the City of Center Line's Property Maintenance Code unconstitutional; Counts I, III, IV, V, VI, and part of Count II of the complaint seeking damages are **DISMISSED WITH PREJUDICE**; and Plaintiff's motion for class certification (ECF No. 15) is **DISMISSED** as moot.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 31, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager